We'll move to our third case this morning, McGreal v. Village of Orland Park Good morning, Your Honors. Good morning. We'll have to get some assistance to you. I don't need it. I can do it from here if Your Honor doesn't mind. That's heavy to move. But we'll have to record the argument with the microphone, and so we do need to lower the podium if we can do that. And this one doesn't lower. It's unlike our podium upstairs. And I'll come up, Your Honor. If you give me a minute when I'm done, because with my chair up, it goes real slow. Okay. That's fine. We'll try to get you as close to the microphone as we can so that we will have a recording. How is that? That's better. Okay. Thank you. All right. You may proceed, Mr. Duros. All right. Thank you, Your Honor. Good morning, judges. And I am surprised that I am here. I've had wonderful experiences before the judge who sanctioned me. She never warned me that I was doing anything wrong. She never claimed or no one has ever claimed that I violated any of her laws or any of her orders. She never admonished me. After this case got tried or went through discovery, excuse me, Your Honor, we then went up to the Seventh Circuit. I had not been successful on my summary judgment proceeding. And on April 15, 2016, Her Honor entered summary judgment. One year later, minus a week, I went before the Seventh Circuit. They affirmed Her Honor. Three months after that, counsel asked if they could come to my office. And, of course, I welcomed them. And I had my client with me there. And they threatened me with sanctions. They wanted to get all their case costs and all their attorney fees. I had never been served with a Rule 11 motion for sanction in this case. My client thought he was being highway robbed. I sent them e-mails right after that meeting, said, send me what you have. I will respond to it. File whatever you're going to file. And I was surprised when two months after that, Her Honor entered sanction on an afterthought in the motion for summary judgment. Let me ask you a question about that sequence you just described. Did you tell counsel that you wouldn't respond to their sanctions threats until they filed a motion with the court? I think that is the way I wrote it, Judge. And that's not good under the rule either. I agree with that. I had never been served with a formal motion. I get told many times by lawyers when I file these lawsuits, the moment I first meet them until we get to know each other, you go forward with this, you'll be sanctioned. I would have never had a case in my life if I didn't hear that threat on a regular basis. And I could give you a long list of cases when after that we go forward and we've had some very successful results. But Rule 11 is very clear. And the Seventh Circuit standing alone is moving very close to what all the other circuits are saying and saying there is no substantial compliance with Rule 11. You've got to follow it. And His Honor Judge Hamilton in the Northern Illinois telecom case came right out and said, we're standing alone here. If you're going to threaten a lawyer, and we get them all the time as plaintiff's lawyers with sanctions, follow the rules. Tell them what's wrong. No one told me what was wrong at the time. Right. Our substantial compliance doctrine in the Rule 11 context traces to the Nissenbaum case. Yes. Are you asking us to overrule that case? Judge Hamilton, in his opinion for the panel in that PNC Bank case, did observe how out of step it is from the other circuits and from the text of the rule itself. And the conference committee notes, but didn't go any further than that because the panel found that there was not substantial compliance. Are you asking us to revisit the substantial compliance doctrine and to overrule that Nissenbaum case? Judge, I'm not that brave to ask the judges to reverse anything that the judges stand for. But I am trying to say that my case is very much closer to the Northern Illinois case than it ever will be to the Nussbaum case. Because the truth of the matter is, I was shocked. Her Honor has always given me wonderful trials. I was shocked when she said to me, this case had no merits. If I'd ever gotten further, I think I would have won it before the jury. But that being as it may, I wasn't taking counsel seriously. He hadn't filed a motion. You're supposed to prepare your motion. And they say in their brief, well, we were too busy writing our response brief. We ran out of time and we couldn't prepare a sanctions motion. But that's the rule. They had years to prepare a sanctions motion. They still have never prepared a rule of sanctions against me. Serve it on me and give me the 21 days to evaluate. Oh, my gosh, could they be right? I had reams of evidence in this case. It was properly investigated. They had a 17-day hearing at the arbitrator. The arbitrator tells the man before he ever even testifies on the first day of the hearing, you're a liar. You'll never get your job back with the police department. I call his lawyer. The lawyer confirms it. He shows me I have the letter from the lawyer. Don't go forward with this. What kind of a hearing was that? And the arbitrator doesn't rule until four months after I'm in the case. And that's years after they had taken the 17 days of hearing. The truth of the matter is, I was moving forward as I try to do in every case. Give my client the best even-handed, above-board representation as I can so that, in this case, the Secretary of the Union, who was trying to work for other officers, and I thought was being unduly disciplined after he was, in the very last proceeding, told he was the best police officer since sliced bread. He needed no supervision, and he was a very aggressive officer. Then all of a sudden, after he makes his appeal to the village board, he goes through in two weeks some of the most unusual series of discipline you could have heard of. That screams out to me as a civil rights lawyer. There is something going on here. And he had already had the case on file as a pro se litigant. I would bet most judges in the district court, when they see somebody walking in pro se, would hope that one of us busy lawyers would take on their case and probably keep it closer to the law. But that be that as it may, I am not ashamed about a thing I did in this case. I worked hard for my client. I don't know those bills, so you tell me when I should stop, because I do want to save some time for whatever they're going to say. That's fine. If you'd like to reserve at this point, you'd have two minutes and 12 seconds. Oh, I definitely want to quit. Okay, that's fine. Thank you, Judge. Thank you. Mr. Wall. Whoops, sorry. Just readjust the microphone here, Your Honors. Good morning, Your Honors, and may it please the court. My name is Alan Wall, and I have the privilege of representing the appellees in this appeal. The issue before the court, Your Honors, is straightforward. Did the district court abuse its discretion when it imposed Rule 11 sanctions against the appellant who served as the plaintiff's counsel in the underlying lawsuit of Joseph McGreal v. The Village of Orland Park? The appellees contend that the district court's ruling was supported by both law and fact, and therefore the decision to impose Rule 11 sanctions against the appellant and direct him to pay more than $65,000 in attorney's fees to the appellees should be affirmed. Your Honors, this is not the first time the parties have appeared before this court. On April 15, 2016, the district court granted summary judgment to the defendants on all counts of the plaintiff's complaint alleging violation to his constitutional rights along with the supplemental state law claims. On March 6, 2017, this court affirmed the district court's decision to dismiss the entire complaint on summary judgment. Now in the interim between those two dates, meaning the interim between the district court's summary judgment ruling and this court's decision affirming that ruling, the defendants on June 23, 2016, filed a motion for an award of attorney's fees pursuant to Section 1988. This motion contended that the plaintiff's constitutional and state law claims were frivolous, unreasonable, and lacked the reasonable foundation. The defendant's motion also sought an award of attorney's fees as a sanction under Rule 11 against McGrill's counsel for filing a response to defendant's summary judgment motion that violated the clear requirements of Local Rule 56.1. Is that exactly what the motion said? I'm sorry, Your Honor, I'm having trouble hearing you, I apologize. The Rule 11 part of that motion for fees wasn't directed at a specific pleading. The Rule 11 part of the motion for fees wasn't directed at a specific pleading. Well, Your Honor, the Rule 11 part of the motion did direct the district court's attention to Local 56.1, as I recall. Can you direct me to something specific in the motion? Yes, I can, Your Honor. Your Honor, I am currently referring the court to the defendant's motion for award of attorney's fees pursuant to 42 U.S.C. 1988, which was document 248, and I am on page 9 where the defendants state, and I just quote, in the motion for reconsideration, McGrill's counsel acknowledged his role as plaintiff's counsel in the Mallett case. He also stated that, quote, the Mallett case is often cited by other judges of the federal court. The only reason he offered for not following the rules was that he does not do that intentionally, and then we go on to say that is no excuse at all for the accusations made against the defendants and certainly no excuse for forcing them to incur attorney's fees they had to pay. I think clearly, Your Honor, the fact that there is a reference here to Mallett. Which pleading was filed in violation of Rule 11? It was the plaintiff's response to the defendant's motion for summary judgment. And where does your motion for Rule 11 fees say that? Your Honor, the motion— It doesn't say that anywhere. It does not expressly say that. However, Your Honor— It doesn't implicitly say that anywhere either because the Rule 11 part of the motion for fees was something of an afterthought, or so it would seem. It occupies a couple of paragraphs in a— Your Honor, I— specific pleading that violated Rule 11. Well, Your Honor, I would say a couple things. First of all, the Mallett decision, I think, is very well known, and it is known precisely as a decision that addresses the issue of noncompliance with Local Rule 56.1. I think any attorney who has practiced surely as long as Mr. DeRose would know precisely what the reference to Mallett that is provided in the defendant's motion here means. Indeed, Mr. DeRose was the attorney representing Mallett in the case. With regard to Judge Alefko's decision granting the Rule 11 sanctions specifically for violation of Local Rule 56.1, her decision goes into detail as to how the plaintiff's summary judgment response submissions fell far short of Local Rule 56.1. Indeed, she makes the observation that she could have granted the defendant's summary judgment motion based solely on the violations of Local Rule 56.1 that she detected in the plaintiff's summary judgment response materials. However, she indicated that she soldiered on so that she could also give the plaintiffs the benefit of a consideration of their opposition to the summary judgment motion based on the merits. Right, and that discussion is all contained earlier in her decision, her criticisms of the summary judgment response. Yes, I believe she actually made those criticisms in both her order granting summary judgment and also in her order that I believe, Your Honor, it was September 29, 2017. She again reiterates that the submissions that are the focus of her Rule 11 ruling were substandard to the point, again, that the underlying summary judgment motion could have been granted based simply on those violations. So her order, even if the motion wasn't either explicitly or implicitly focused on the summary judgment response, her order clearly was, is your argument? Yes, Your Honor. Based on what she said about the deficiencies in the summary judgment response early in the order in ruling on the 1988 fees claim. I believe, Your Honor, in her order granting the Rule 11 sanctions, in addition to making the observation that I've quoted to the court, she also included a footnote. I believe it was footnote six in her order that lays out a number, and she lays out an example of what she considers to have been an egregious and disingenuous submissions made by the plaintiff's attorney to the court pursuant to the summary judgment proceedings. That's true. She does identify several egregious violations. And, Your Honor, if I could just address specifically the issue about Rule 11c2 procedure. And I know you had asked Mr. DeRose if he was seeking to have the court overturn Niesenbaum. And, Your Honor, I would submit there are three reasons, at least, why this is not the case to do that. First of all, the district court properly noted both in its order quantifying the amount of the sanctions that had been previously entered, and that's document number 293, and in the order denying appellant's motion to reconsider the amount of attorneys he's awarded, that the appellant, Mr. DeRose, failed to raise any Rule 112c procedural issues when he responded to the defendant's initial motion for sanctions. In other words, I believe the district court judge is indicating here that Mr. DeRose waived that argument because he did not raise it at the right time. Yes, that's how I read that order as well. She's saying that would have been the proper time to raise a procedural violation argument. Indeed. Second, Your Honor, I think it is important to reemphasize a matter that Your Honors raised with Mr. DeRose a few minutes ago, which is that Northern Illinois Telecom, the opinion to which Mr. DeRose directed the court, does indicate, and I quote, Nissenbaum remains controlling circuit law on this point. So he may refer to Northern Illinois Telecom, but at the end of the day, Judge Hamilton indicates in Northern Illinois Telecom that Nissenbaum is still, and the substantial compliance doctrine remains the controlling law in this circuit. And then third, Your Honor, I would just note that Mr. DeRose, in his reply brief to this court, indicated that he would never have accepted an admonishment or a notice about substantial or unreasonable or frivolous filings. Indeed, he indicates he would not have accepted a notice or admonishment from defense counsel, and that leads to the obvious inference. He wouldn't have withdrawn the summary judgment materials one way or the other. Thank you, Your Honors. Thank you. Yes. I apologize. That's fine. I think we have your argument. Thank you. Mr. DeRose, you do have some time left. Your Honors, when I called the matter to the attention of Her Honor on a couple of occasions, I take every chance I can to get a motion to reconsider. She said it was procedural, and I said, Your Honor, this is the law in writing. And, you know, if it was a motion by Her Honor herself because she felt our response to summary judgment was so missing, she has a burden under Rule 11 too. Give us a chance to come in and tell her what we're arguing. Tell her what we know. We never even got that hearing. We were surprised by all of this. And the truth of the matter is an email is not a replacement for a motion for sanctions, nor is a letter, as we've seen. All the other circuits say we're going to demand strict compliance. Otherwise, lawyers like me, we're going to be scared off right and left. Right. But this circuit allows substantial compliance by letter. And that doctrine, you're not asking us to overrule. I am. You are not. I'm just asking you to protect me. If you can help the rest of us, I'd love it. Thank you. Anything further? Nothing, Judge. And thank you for your attention. All right. Thank you. Our thanks to both counsel. The case is taken under advisory.